**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION**

ROGELIO BAUTISTA DURAN,

    Petitioner,

v.

TRACY JOHNS,

    Respondent.[1]

CIVIL ACTION NO.: 5:16-cv-102

## **ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Petitioner Rogelio Bautista Duran ("Duran"), who is currently housed at D. Ray James Correctional Facility ("D. Ray James") in Folkston, Georgia, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1.) Respondent filed a Response. (Doc. 11.) Duran filed a Reply. (Doc. 12.) For the reasons which follow, I **RECOMMEND** that the Court **DENY in part** and **DIMISS in part** Duran's Petition, **DIRECT** the Clerk of Court to enter the appropriate judgment of dismissal and **CLOSE** this case, and **DENY** Duran *in forma pauperis* status on appeal.

## **BACKGROUND**

Duran is currently serving a seventy-two month sentence for conspiracy to possess with the intent to distribute 500 grams or more of methamphetamine. (Doc. 11-1, pp. 23–33.) At the

---

[1] The only proper respondent in this Section 2241 action is the inmate's immediate custodian— the warden of the facility where the inmate is confined. See Rumsfeld v. Padilla, 542 U.S. 426, 434–35 (2004). As Tracy Johns is the Warden at D. Ray James Correctional Facility, the Clerk is **AUTHORIZED** and **DIRECTED** to change the name of the respondent to Tracy Johns, Warden, upon the docket and record of this case.

time he filed this Petition, he was incarcerated at D. Ray James, and he has not notified the Court of any change in his place of custody.[2]

On March 23, 2016, D. Ray James was placed on lock down status due to an inmate-on-inmate assault that occurred on the north soccer field of the facility. (Doc. 11-1, pp. 39–42.) Various inmates, including Duran, were identified as suspects in the assault of approximately seven inmates. (Id.) Prison officials placed Duran in the Restrictive Housing Unit ("RHU") on March 24, 2016, pending investigation into the assault. (Id.) While in the RHU, Duran allegedly attempted to bribe an officer to bring contraband, specifically a cellular telephone, into the prison. (Id.) Duran first offered Correctional Officer Tyler Murray $2,000.00 and later raised the offer to $5,000.00 to bring in the phone. (Id.) Officer Murray refused Duran's requests and notified Special Investigative Supervisor Mr. Philip Popwell of the attempted bribe. (Id.)

On March 27, 2016, Investigative Officer Kristina Henderson initiated an on-site investigation of the allegations against Duran. (Id.) That investigation cleared Duran of being involved in the assault on the soccer field; however, he remained in the RHU pending Officer Henderson's investigation into his alleged attempted bribery of Officer Murray and attempted introduction of a cell phone. (Id.) Officer Henderson's investigation was finalized by Warden Johns on May 10, 2016. On May 10, 2016, Officer Henderson wrote a three-page Incident Report charging Duran with offering a staff member a bribe and attempting to possess a cell phone in violation of D. Ray James disciplinary code. (Id. at pp. 46–50.) D. Ray James staff member Noel P. Clark delivered a copy of the three-page Incident Report to Duran on May 10, 2016. (Id.)

---

[2] The BOP contracts with GEO Group, Inc., to house low security criminal alien inmates at D. Ray James. (Doc. 13-1, p. 1.)

D. Ray James personnel began an investigation into the Incident Report on May 10, 2016. (Id.) The investigator advised Duran of his right to remain silent at all stages of the disciplinary process and that his silence may be used to draw an adverse inference against him at any stage of the disciplinary process. (Id.) The investigator also informed Duran that his silence alone could not be used to support a finding that he committed the violation. (Id.) Duran acknowledged that he understood these rights and denied every statement in the Incident Report. (Id.) He also claimed that he did not know Officer Murray. (Id.) The investigator concluded that there was sufficient evidence to support the charge against Duran, and the Incident Report was then forwarded to the Unit Disciplinary Committee ("UDC"). (Id.)

The UDC hearing was held on May 16, 2016. Petitioner appeared at the hearing and provided a statement in his defense restating his prior denial of the charges. Due to the nature of the allegation, the UDC made no decision on the merits and referred the matter to be heard by a Disciplinary Hearing Officer ("DHO").

On May 16, 2016, D. Ray James staff provided Duran with notification of the DHO hearing and his rights regarding the hearing. (Id. at pp. 52–55.) Duran acknowledged his opportunity to request witnesses and the assistance of a staff representative at the hearing, but he opted not to call any witnesses or make use of his right to staff representation at that time. (Id.)

DHO Roger Perry conducted Duran's hearing on May 23, 2016. (Id. at pp. 39–42.) A translation service was used during the hearing. (Id.) Duran was once again advised of his due process rights and provided an opportunity to make a statement and present documents. (Id.) He reiterated his waiver of his right to a staff representative and his opportunity to call witnesses. (Id.) Duran again denied the charges and maintained that he did not know Officer Murray. (Id.) In addition to the Incident Report and Investigation, DHO Perry considered the memorandum

from Officer Murray and the SIS Investigation conducted by Officer Henderson. (Id.) DHO Perry found that Duran's claim that he did not know Officer Murray lacked credibility because Officer Murray was assigned to Duran's dormitory for two months prior to the incident. (Id.) Additionally, Duran's statement that Officer Murray had caught other inmates with cell phones indicated Duran's familiarity with Officer Murray. (Id.)

DHO Perry determined that Duran committed the act as charged, and DHO Perry recommended Duran be sanctioned with, *inter alia*, disallowance of forty-one days of good conduct time and forfeiture of ninety days of non-vested good conduct time. (Id. at p. 41.) DHO Perry forwarded his DHO report to the DHO Oversight Specialist with the Bureau of Prisons' ("BOP") Privatization Management Branch in Washington, D.C., who certified that the recommended sanctions were appropriate and that the hearing complied with due process. (Id. at p. 57.) Following this certification, on June 8, 2016, DHO Perry personally delivered a copy of his DHO report to Duran. (Id. at p. 42.) DHO Perry advised Duran of his right to appeal the DHO findings and resulting sanctions. (Id.)

## DISCUSSION

In his Petition, Duran contends that the DHO hearing violated his due process rights, that there was not sufficient evidence to find that he committed the acts of bribery or attempting to possess a cell phone, and that D. Ray James staff sexually assaulted him and retaliated against him. (Doc. 1.) He requests that the Court order the incident report to be expunged and that his lost and forfeited good conduct time be restored. (Id.) He also seeks all other relief that is just and proper. (Id.)

Respondent counters that Duran received the appropriate due process protections during the disciplinary proceedings and that the sanctions against him were supported by sufficient

evidence. (Doc. 11, pp. 11–13.) Further, Respondent maintains that Duran's allegations of sexual assault are not cognizable in this Section 2241 action and are unavailing.

**I.      Whether Due Process Requirements Were Met**

To determine whether Duran's right to due process was violated, it must be determined what process was due to Duran during the disciplinary hearing process. A prisoner has a protected liberty interest in statutory good time credits, and therefore, a prisoner has a constitutional right to procedural due process in the form of a disciplinary hearing before those credits are denied or taken away. O'Bryant v. Finch, 637 F.3d 1207, 1213 (11th Cir. 2011) (citing Wolff v. McDonnell, 418 U.S. 539, 555–57 (1974)). That due process right is satisfied when the inmate: (1) receives advance written notice of the charges against him; (2) is given the opportunity to call witnesses and present documentary evidence; and (3) receives a written statement setting forth the disciplinary board's findings of fact. Id. (citing Wolff, 418 U.S. at 563–67). Additionally, the Court of Appeals for the Eleventh Circuit has determined that an inmate has the right to attend his disciplinary hearing. Battle v. Barton, 970 F.2d 779, 782–83 (11th Cir. 1992).

As laid out above and in the attachments to Respondent's Response, the record clearly reflects that Duran received the required due process protections. The investigation into this incident was completed on May 10, 2016, and Duran received a copy of his incident report on that same date. Duran does not dispute that he received advance written notice of the charges by virtue of receipt of the incident report on May 10, 2016. Duran's incident report was investigated, and he received a UDC hearing on May 16, 2016, in accordance with 28 C.F.R. § 541.5. Duran was offered an opportunity to present documentary evidence and testimony from witnesses at the UDC hearing.

Due to the nature of the charges, the UDC referred the incident report to the DHO, and Duran was provided notice of the DHO hearing and notice of his rights at the DHO hearing. Duran was repeatedly advised of the right to "call witnesses" and "present documentary evidence." (Doc. 11-1, pp. 39–42, 52–55.) The DHO hearing was held on May 23, 2016, and Duran was afforded sufficient advance notice of the hearing, the charges, and his rights. Duran attended the hearing, and his due process rights were again read and reviewed with him. (Id. at pp. 39–42.) He indicated that he understood his rights, and he was provided an opportunity to make a statement and present documents. (Id.) Duran waived his right to a staff representative, and he did not request to present witnesses other than his own testimony or documentary evidence. (Id.) The well-documented evidence that Duran was advised of his rights and that he had an opportunity to present witnesses and documentary evidence far outweighs his conclusory allegations to the contrary.

Moreover, the record reveals sufficient evidence to support the sanctions against Duran. "[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced." Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455 (1985). Determining whether the "some evidence" standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Smith v. Sec'y, Fla. Dep't of Corr., 432 F. App'x 843, 845 (11th Cir. 2011). "Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 456. "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators

that have some basis in fact." Tedesco v. Sec'y for Dep't of Corr., 190 F. App'x 752, 757 (11th Cir. 2006) (internal citation omitted). In addition, an inmate facing disciplinary sanctions is not entitled to the full panoply of rights afforded to criminal defendants. Id.

DHO Perry cited to a number of items of evidence when finding that Duran committed the acts of attempting to bribe an officer and attempting to possess contraband. The DHO Report outlines that the sanctions against Duran were based on the written reports of staff and an internal investigation of the allegations against Duran. Additionally, the DHO assessed Duran's denials and determined that they lacked credibility. It is not the Court's place to reweigh these credibility decisions or to reexamine all of the evidence against Duran. Rather, the Court is to merely assess whether some evidence supports the sanctions against him. Here, the record unquestionably satisfies that inquiry.

Duran received all of the due process protections afforded him during the disciplinary proceedings, and any contentions to the contrary are without merit. Thus, the Court should **DENY** this portion of Duran's Petition.

## II. Whether Duran's Sexual Assault and Harassment Claims are Cognizable

Duran claims that when he was transferred to the RHU on March 24, 2016, Officer Popwell "undress[ed] [Duran] from behind to handle a tattoo that [Duran] has in shoulders back [sic]." (Doc. 1, p. 3.) He contends that this violated his rights secured by the Eighth and Fourteenth Amendments. (Id. at p. 13.) Duran cannot bring these sexual assault and harassment claims in this Section 2241 action. His claims would ordinarily be brought pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). The distinction between claims which may be brought under Bivens and those which must be brought as habeas petitions is reasonably well-settled. Claims in which prisoners challenge the

circumstances of their confinement are Bivens actions, not habeas actions. See, e.g., Hill v. McDonough, 547 U.S. 573, 579 (2006). Habeas actions, in contrast, explicitly or by necessary implication, challenge a prisoner's conviction or the sentence imposed on him by a court (or under the administrative system implementing the judgment). Preiser v. Rodriguez, 411 U.S. 475, 500 (1973). Thus, for example, when a prisoner makes a claim that, if successful, could shorten or invalidate his term of imprisonment, the claim must be brought as a habeas petition, not as a Bivens claim. See, e.g., Edwards v. Balisok, 520 U.S. 641 (1997); Heck v. Humphrey, 512 U.S. 477 (1994).

Duran's sexual assault and harassment claims relate to the conditions of his confinement and do not challenge his sentence or conviction or the duration of his confinement. Even if the Court were to find in his favor regarding these claims, the relief would not be to shorten his sentence or order his release. Accordingly, these claims are not cognizable under Section 2241, and the Court should **DISMISS** these portions of Duran's Petition.

### III. Whether the Court Should Recharacterize Duran's Claims

"Federal courts sometimes will ignore the legal label that a *pro se* litigant attaches to a motion and recharacterize the motion in order to place it within a different legal category." Retic v. United States, 215 F. App'x at 964 (quoting Castro v. United States, 540 U.S. 375, 381 (2003)). This Court may "recharacterize a *pro se* litigant's motion to create a better correspondence between the substance of the motion and its underlying legal basis." Rameses v. United States District Court, 523 F. App'x at 694. Federal courts "may do so in order to avoid an unnecessary dismissal, to avoid inappropriately stringent application of formal labeling requirements, or to create a better correspondence between the substance of the motion and its underlying legal basis." Id. (quoting Castro, 540 U.S. at 381–82).

8

However, it would be futile, and thus, improper to recharacterize Duran's non-habeas claims as a Bivens action. The United States Supreme Court has held that a federal prisoner cannot bring a Bivens claim against employees of a privately operated federal prison when state law authorizes adequate alternative actions.[3] Minneci v. Pollard, 565 U.S. 118 (2012). The Court stated that "in the case of a privately employed defendant, state tort law provides an 'alternative, existing process' capable of protecting the constitutional interests at stake." Id. at 125 (quoting Wilkie v. Robbins, 551 U.S. 537, 550 (2007) (declining to extend Bivens liability to allow a landowner to pursue a private action against employees of the Bureau of Land Development)); Goia v. CitiFinancial Auto, 499 F. App'x 930, 936 (11th Cir. 2012) ("[T]he Supreme Court has declined to expand Bivens to encompass a suit against private corporations acting under color of federal law.") (citing Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 71, 74 (2001)). The Court can only recognize a Bivens action if: (1) there are no adequate alternative remedies under state or federal law; and (2) no "special factors" counsel against implying a cause of action. Robles v. Kane, 550 F. App'x 784, 787 (11th Cir. 2013). State tort law remedies are adequate when they provide roughly similar incentives for defendants to comply with the constitutional right at issue while also providing roughly similar compensation to victims of violations. Minneci, 565 U.S. at 130. The Eleventh Circuit has held that, at least as to some claims, Georgia tort law provides federal prisoners held in privately-run facilities "arguably better remedies than a Bivens claim." Robles, 550 F. App'x at 788.

D. Ray James is a private entity that operates under a contract with the BOP. The employees of D. Ray James are employees of The GEO Group, Inc., a private entity. Thus, like

---

[5] In the Eleventh Circuit, such a claim has been foreclosed since 2008. See Alba v. Montford, 517 F.3d 1249 (11th Cir. 2008) (declining to extend Bivens to cover a claim for deliberate indifference to medical needs against Corrections Corporation of America, a private facility under contract with the Bureau of Prisons, and its employees).

9

the plaintiffs in Minneci and Alba, so long as Duran has adequate state law remedies available to him, he may not maintain a cause of action pursuant to Bivens against The GEO Group, Inc., or its employees.

Georgia tort law provides Duran such alternative remedies. For instance, he may pursue claims for assault and battery. See Vasquez v. Smith, 576 S.E.2d 59, 61 (Ga. App. 2003) ("[I]n battery cases . . . the unwanted touching itself constitutes the injury to the plaintiff[.]"); Darnell v. Houston Cty. Bd. of Educ., 506 S.E. 2d 385, 388 (Ga. App. 1998) ("A cause of action for assault and battery can be supported by even minimal touching[.]"). In fact, Duran possesses an "arguably superior" cause of action in state court, because, unlike in a Bivens action, he may be able to pursue state remedies under a theory of *respondeat superior* and his available damages may be greater. See O.C.G.A. § 51-2-2; Alba, 517 F.3d at 1256 n.7.

Moreover, even if Duran's claims do not fit the definition of assault and battery, they can still be addressed through state law. As Magistrate Judge Brian K. Epps of this Court explained in the face of claims brought by a prisoner in a private facility:

> To the extent Plaintiff's claims do not fall under the traditional rubric of medical malpractice, Plaintiff could also bring his claims under Georgia negligence law. Georgia negligence law provides that a plaintiff may recover for emotional distress without a showing of physical injury if the defendant's conduct was malicious, willful, or wanton and directed toward the plaintiff. Jordan v. Atlanta Affordable Hous. Fund, Ltd., 498 S.E.2d 104, 106 (Ga. Ct. App. 1998). This standard requires conscious indifference to the consequences of one's actions. Brooks v. Gray, 585 S.E.2d 188, 189 (Ga. Ct. App. 2003). This is remarkably similar to the standard for deliberate indifference under the Eighth Amendment which requires subjective recklessness on the part of prison officials. Farmer v. Brennan, 511 U.S. 825, 839 (1994). Given the similar alignment of the Eighth Amendment standard and Georgia's negligence law for nonphysical injuries, Georgia tort law provides similar incentives for defendants to comply with the Eighth Amendment in addition to superior compensation in the form of *respondeat superior*.

Galloway v. CCA Mcrae Corr. Facility, No. CV 314-067, 2016 WL 4197588, at *3 (S.D. Ga. Aug. 8, 2016), *report and recommendation adopted*, No. CV 314-067, 2016 WL 4535372 (S.D. Ga. Aug. 30, 2016); see also Cottrell v. Smith, 788 S.E.2d 772, 780 (Ga. 2016) (Georgia recognizes claim for intentional infliction of emotional distress where: (1) defendant's conduct was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress was severe.); Robles, 550 F. App'x at 787–88 (Georgia law provides adequate remedy for interference with prisoner's legal mail); Poole v. Streiff, No. CIV. A. 07-0749-KD-C, 2008 WL 2699420, at *3 (S.D. Ala. June 30, 2008) (Plaintiff had adequate state law remedies under Alabama law for negligence and wantonness for claims he was sent to solitary confinement); Robles v. Bureau of Prisons, No. CV511-120, 2012 WL 488080, at *2 (S.D. Ga. Jan. 23, 2012), *report and recommendation adopted*, No. CV 511-120, 2012 WL 484076 (S.D. Ga. Feb. 14, 2012) (dismissing claims food was nutritionally inadequate, citing Alba).

Duran cannot bring a Bivens action against defendants such as Warden Tracy Johns. Rather, Plaintiff's remedy, if any, lies in state court. For all of these reasons, the Court should **DISMISS** Duran's claims that he was sexually assaulted and harassed.

## IV.    Leave to Appeal *in Forma Pauperis*

The Court should also deny Duran leave to appeal *in forma pauperis*. Though Duran has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed"). An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this

context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous, and thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Given the above analysis of Duran's Petition and Respondent's Response, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **DENY in part** and **DISMISS in part** Duran's Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2241, (doc. 1), and **DIRECT** the Clerk of Court to enter the appropriate judgment of dismissal and **CLOSE** this case. I further **RECOMMEND** that the Court **DENY** Duran leave to proceed *in forma pauperis* on appeal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28

U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.  The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.  The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Duran and Respondent.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 19th day of September, 2017.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA